# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6447 | **DATE** | 6/19/2001 |
| **CASE TITLE** | SHAWN F. S. SMITH vs. AMERICAN AIRLINES, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants in part and denies in part American's motion to strike certain paragraphs of plaintiff's Local Rule 56.1(b)(3) statement in response to defendant's statement of facts and to strike additional facts in opposition to American Airlines' motion for summary judgment [docket nos. 24-1, 24-2, *see* 33-1] and grants its motion for summary judgment [docket no. 13-1, *see* 33-1]. This case is hereby terminated. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUN 2 2 2001 date docketed | |
| | Docketing to mail notices. | | 37 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | 6/19/2001 | |
| CG courtroom deputy's initials | | FILED FOR DOCKETING JUN 21 PM 5:51 date mailed notice CG mailing deputy initials | |
| | | Date/time received in central Clerk's Office | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAWN F. S. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Judge Ronald A. Guzman |
| v. ) | |
| ) | 99 C 6447 |
| AMERICAN AIRLINES, INC., ) | |
| ) | |
| Defendant. ) | |

DOCKETED
JUN 2 2 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Shawn Smith ("Smith") has sued his former employer, American Airlines, Inc. ("American"), for: (1) retaliatory discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (2) intentional discrimination because of his race under Title VII. Before the Court is American's motion for summary judgment and motion to strike portions of Smith's response to its motion. For the reasons provided in this Memorandum Opinion and Order, the Court grants in part and denies in part its motion to strike[1] and grants American's motion for summary judgment.

## FACTS

Smith, an African American male, worked as a fleet service crew chief for American.

---

[1]Defendant has moved to strike certain paragraphs of plaintiff's LR 56.1(b)(3)(A) responsive statement and certain paragraphs of plaintiff's LR 56.1(b)(3)(B) statement of additional facts. The Court grants the motion to strike paragraphs 20 and 24 of plaintiff's LR 56.1(b)(3)(A) statement in response to defendant's statement of facts for failure to comply with that rule. For the same reason, the Court strikes paragraphs 25 of such statement. The Court denies the motion to strike portions of plaintiff's LR 56.1(b)(3)(B) statement to the extent that such fact statements comply with FED. R. CIV. P. 56(e).

(Def.'s LR 56.1(a)(3) ¶¶ 2, 17.) On April 18, 1996, Smith was placed on the first step of discipline for unsatisfactory work performance because he failed to check with his crew to see if 608 lbs. of mail had been loaded on to an aircraft and failed to show this mail in his final load update. (*Id.* ¶ 19; Pl.'s LR 56.1(b)(3)(B) ¶ 51.)

It is undisputed that on December 10, 1997, Smith initially refused to ramp connect bags. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 47-49.) After repeated oral directives and while Customer Service Manager Mark Behrendsen executed a written directive to ramp connect the bags, Smith ultimately complied and instructed his crew to load and count the bags. (*Id.* ¶¶ 54, 56.) Shortly thereafter, Customer Service Manager Dave Ellis instructed Smith to ramp connect all advance bags for the remainder of the day. (*Id.* ¶ 59; Def.'s LR 56.1(a)(3) ¶ 23.) Smith called Ellis, who is an African American, a "lying bastard," "coon," and "Uncle Tom" and used the "f-word." (Def.'s LR 56.1(a)(3) ¶ 23.) Smith then made the statement in the presence of Ellis and Behrendsen that "[i]f anybody is going to touch me, I'm going to kill them." (*Id.* ¶ 24.) Smith's threatening statements and physical conduct, which included jerking and bouncing from point to point and "getting in" Behrendsen's face, threatened and intimidated Behrendsen and caused him to back up against a wall. (*Id.* ¶ 25.)

On December 15, 1997, Smith was terminated from his position for violating American Rules 7 and 32. (Def.'s LR 56.1(a)(3) ¶ 20.) American Airlines Rule 7 states: "Follow instructions received from Supervisors. Insubordination will not be tolerated." (*Id.* ¶ 14.) American Airlines Rule 32 provides: "Threatening, intimidating or otherwise interfering with other employees at any time is prohibited. This includes off-duty periods." (*Id.* ¶ 15.) The Final Advisory issued by Al Knoblauch to Smith states:

2

> On December 10, 1997 you were the Crew Chief assigned to gate K19. At approximately 1350 you received a call from a CSM and [were] directed to load advance bags on flight 817 to PHX. In response you hung up the phone and did not comply. Shortly thereafter another CSM specifically instructed you to again load the advance bags. You not only refused to comply with his instruction on two occasions, but also became abusive, used vulgarities and made threatening and intimidating comments. Subsequent to these directives, you were again approached by a third CSM who attempted to clearly explain the reason for the previous directives for loading of the advanced bags. You interrupted, and immediately became abusive, intimidating and insubordinate. Moreover, the comments made to the CSM were degrading, insulting and embarrassing. Additionally, at one point you specifically stated that you were going to "kill somebody" when you were asked to surrender you [sic] identification."

(*Id.* ¶ 22.) Smith's union filed a grievance on his behalf challenging American's decision to terminate him. (*Id.* ¶ 26.) The American Airlines, Inc. and Transport Workers Union Chicago (ORD) Area Board of Adjustment ("Adjustment Board") found that American had just cause to terminate Smith for a proven Rule 7 and 32 violation due to the totality of his abusive and threatening language and behavior. (*Id.* ¶¶ 27-28.)

## DISCUSSION

Federal Rule of Civil Procedure ("Rule") 56(c) allows the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering the evidence submitted by the parties, we do not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We "must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). If a reasonable jury could not find for the

3

party opposing the motion, it must be granted. *Seshadri v. Kasraian*, 130 F.3d 798, 804 (7th Cir. 1997).

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e-2(a)(1). A "plaintiff bringing suit under . . . Title VII can meet his burden of proof for establishing intentional discrimination either through direct proof of discriminatory intent, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), or through the indirect, burden-shifting method of proof first elaborated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993).

Because Smith concedes that he has not offered any direct evidence of discriminatory intent, the Court employs the *McDonnell Douglas* analysis. (*See* Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 2-12.) The *McDonnell Douglas* burden-shifting analysis requires plaintiff to first offer sufficient evidence to establish a *prima facie* case. 411 U.S. at 802. To demonstrate a *prima facie* case for wrongful termination because of his race, plaintiff must demonstrate that: (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside his class more favorably. *See Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994). If plaintiff is able to set out a *prima facie* case, then the burden shifts to the employer to articulate a legitimate nondiscriminatory explanation for the action. *See McDonnell Douglas*, 411 U.S. at 802. If the employer makes a showing of a legitimate justification for its action, plaintiff must

4

then establish that this reason is a mere pretext for discrimination. *See id.* at 804.

As a threshold matter, American argues that Smith is precluded by the doctrine of collateral estoppel from relitigating the veracity of American's motivation for terminating him. "Collateral estoppel will apply if: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action." *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 (7th Cir. 1995).

This issue need not detain the Court long. Although American is correct in its assertion that an arbitration award is an adjudication which may have an estoppel effect, it is incorrect in its theory that the issue before this Court was actually litigated and decided on the merits by the Adjustment Board. The issue before the Adjustment Board was whether or not American's reasons for terminating Smith met the "just cause" standard, not whether American's reasons for terminating Smith were a pretext for discrimination. In fact, American's Exhibit D in support of its motion supports this conclusion because the Adjustment Board never even broached the issue of discrimination and pretext on the part of American. Therefore, the Court finds that Smith is not collaterally estopped from litigating whether American's reasons for terminating him were the real reasons for his termination, *i.e.*, whether the reasons are a pretext for discrimination and retaliation.

Next, American argues in the alternative that Smith cannot make out a *prima facie* case of discrimination under *McDonnell Douglas* because he has failed to establish that similarly situated individuals not in the protected class were treated more favorably. Plaintiff has the

5

burden of showing that similarly situated non-African American employees who were involved in acts of comparable seriousness and had been the subject of comparable complaints were retained while plaintiff was not. *See Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 561 (7th Cir. 1998); *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 779 (7th Cir. 1994). "[W]here a different decision maker is involved, employees are rarely similarly situated." *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 350 n.3 (7th Cir. 1997) (citing *Timms v. Frank*, 953 F.2d 281, 287 (7th Cir. 1992)).

Smith argues that the following employees, who are Caucasians, were similarly situated and were retained while he was terminated: Dave Miller, Steve O'Reilly, and Sam Brandt. The Court disagrees that these employees are similarly situated.

First, unlike Smith, none of these employees received disciplinary advisories prior to the date of the allegedly comparable incidents. (Def.'s LR 56.1(a)(3) ¶¶ 30, 31, 32.) It is undisputed that unlike Miller, O'Reilly, and Brandt, Smith received a "first step advisory" on April 18, 1996 for unsatisfactory work performance for failing to account for approximately 608 pounds of mail that was loaded onto a flight for which he was crew chief. (*Compare* Def.'s LR 56.1(a)(3) ¶ 19, *with* Pl.'s LR 56.1(b)(3)(A) ¶ 19; *see also* Pl.'s LR 56.1(b)(3)(B) ¶ 51.) Regardless of whether American explicitly relied on Smith's prior advisory when terminating him, this advisory was a part of Smith's job history and this Court may therefore consider it when determining whether Smith is similarly situated to the alleged comparable employees.

Moreover, the purported comparable employees did not engage in the same misconduct that Smith is complained of committing. On December 10, 1997, Smith initially failed to ramp connect bags. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 47-49.) After repeated oral directives and while

6

Behrendsen executed a written directive to ramp connect the advance bags, Smith ultimately complied and instructed his crew to load and count the bags. (*Id.* ¶ 54, 56.) Shortly thereafter, Dave Ellis, Customer Service Manager, instructed Smith to ramp connect all advance bags for the remainder of the day. (*Id.* ¶ 59; Def.'s LR 56.1(a)(3) ¶ 23.) Smith called Ellis, who is an African American, a "lying bastard" and a "coon" and made other derogatory remarks. (Def.'s LR 56.1(a)(3) ¶ 23.) Smith then made the statement in the presence of Customer Services Managers David Ellis and Mark Behrendsen that "[i]f anybody is going to touch me, I'm going to kill them." (*Id.* ¶ 24.) Smith's threatening statements and physical conduct, which included jerking and bouncing from point to point and "getting in" Behrendsen's face, threatened and intimidated Behrendsen and caused him to back up against a wall. (*Id.* ¶ 25.) Unlike this incident, none of the incidents involving Miller, O'Reilly, and Brandt involved insubordination in combination with intimidating behavior and threats of harm that were perceived by supervisors to be directed at them. (*See id.* ¶¶ 30-32.)

Furthermore, while Miller, O'Reilly, and Brandt were disciplined by Lou Moskerc, Anthony Markowski, and Roy Burkhardt, respectively, Smith was disciplined by Al Knoblauch. (*Id.*) It is undisputed that each manager has the discretion to terminate an employee for certain incidents and offenses depending on the severity of the incident or offense and the employee's record. (*Id.* ¶ 13.) Given the undisputed facts, it is extremely difficult to determine that Smith's termination was caused by intentional discrimination because the individual managerial discretion of four different decision makers was involved.

For each of these reasons, the Court finds that Smith's circumstances were unique. Because Smith has failed to present sufficient evidence to create a genuine issue as to a material

7

fact regarding whether American treated him differently than similarly situated non-African Americans, Smith fails to establish a *prima facie* case of race discrimination.

Next, the Court addresses Smith's retaliation claim. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that he (1) "engaged in statutorily protected expression;" (2) "suffered an adverse action by h[is] employer;" and (3) "there is a causal link between h[is] protected expression and the adverse action." *Sweeney v. West*, 149 F.3d 550, 555 (7th Cir. 1998).

The first and second element are undisputed. On September 15, 1997, Smith submitted a written statement to American in conjunction with a "Rule 29F" hearing held due to an incident involving Smith's refusal of freight which states in part that (1) Smith believed that manager Sedlack was "a racist" and "part of the Old Boy network that on a daily bases [sic] misuses their power against people of color"; and (2) Smith accused American of retaliation for his part "in helping people of color." (Pl.'s LR 56.1(b)(3)(B) ¶ 71.) In addition, on December 10, 1997, during the incident in which Smith used abusive language and was insubordinate, Smith complained to American's Human Resources department that Behrendsen was threatening his job and harassing him. (*Id.* ¶ 57.) Further, the second element is satisfied because Smith suffered an adverse action when he was terminated on December 15, 1997. (Def.'s LR 56.1(a)(3) ¶ 20.)

Although Smith has established the first two prongs of a *prima facie* case, he has failed to

8

establish a causal link between his protected expression and his termination. While it is true that a Court may consider temporal proximity of the protected expression and the adverse employment action in its causation analysis, *see e.g., Sweeney*, 149 F.3d at 557, temporal sequence is not all the Court considers. The Court must look to any intervening cause that breaks the causal chain. Smith's admitted profanity and abusive language in initially refusing to load the advance bags and his threat in the presence of two supervisors that "[i]f anybody is going to touch me, I'm going to kill them," (*see* Def.'s LR 56.1(a)(3) ¶ 24), constitutes such an intervening cause, regardless of events that occurred prior to these actions.

Even if Smith could establish a *prima facie* case of retaliation (or discrimination for that matter), he has failed to establish that American's legitimate, nondiscriminatory reason for terminating him is pretextual. "A plaintiff can establish pretext either directly, with evidence suggesting that retaliation or discrimination was the most likely motive for the termination, or indirectly, by showing that the employer's proffered reason was not worthy of belief." *Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir. 1999).

Smith has apparently chosen the direct method and has introduced two statements that he believes are direct evidence that retaliation or discrimination was the most likely motive for his termination. Smith relies on the statement of Shift Manager Kathy Briggs, who, when introduced to Smith for the first time at a Board of Inquiry hearing regarding another employee, said, "So you're the notorious Shawn Smith." (Pl.'s LR 56.1(b)(3)(B) ¶ 85.) While this statement could be used to show the speaker's knowledge of Smith, Briggs' statement does not show in any way that American's reasons for terminating Smith for insubordination and use of threats and intimidation were pretextual, and any conclusion to the contrary would be merely

9

speculative. In addition, Smith relies on Behrendsen's repeated statement after Smith had initially refused to load the advance bags on December 10, 1997 that "I'm going to have your job and have you on the street." (*Id.* ¶ 44.) Behrendsen made this statement only after Smith initially refused to accept advance bags despite a request to do so and repeated the statement only after Smith repeatedly refused Behrendsen's oral directives and became verbally abusive. (Def.'s LR 56.1(b)(3)(B) ¶ 42-44, 46, 49.) The fact that Smith complained to American's Human Resources department after Smith initially refused to load the bags and became verbally abusive and after Behrendsen made those statements does not diminish the seriousness of Smith's insubordination. Given these undisputed facts, the Court finds that no rational jury could find in favor of Smith with regard to pretext. Regardless of whether Behrendsen's statement is appropriate or inappropriate, it does not evidence any discriminatory animus based on race or any retaliatory animus based on protected expression. Thus, neither these statements themselves nor the context in which they were made are sufficient to raise a genuine issue as to a material fact regarding whether American's proffered reasons for Smith's dismissal were pretextual.

Therefore, Smith has failed to establish a *prima facie* case of discrimination based on race and retaliation. Even if he could establish a *prima facie* case in either cause of action, he fails ultimately to establish that American's reasons for terminating him were merely a pretext. Accordingly, the Court grants American's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part American's motion to strike certain paragraphs of plaintiff's Local Rule 56.1(b)(3) statement in response to defendant's statement of facts and to strike additional facts in opposition to American Airlines' motion for summary judgment [docket nos. 24-1, 24-2, *see* 33-1] and grants its motion for summary judgment [docket no. 13-1, *see* 33-1]. This case is hereby terminated. This is a final and appealable order.

**SO ORDERED**                     ENTERED: 6/19/07

_____
**HON. RONALD A. GUZMAN**
**United States Judge**